Filed 10/30/14  Peralta v. Bank of America CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| FREDERICO P. PERALTA, JR., et al., | |
| Plaintiffs and Appellants, | E058190 |
| v. | (Super.Ct.No. RIC1111918) |
| BANK OF AMERICA CORP. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Craig Riemer, Judge. Affirmed.

Law Offices of Thomas Gillen and Thomas W. Gillen for Plaintiffs and Appellants.

Bryan Cave, Sean D. Muntz, Aileen M. Hunter, Katherine M. Harrison and Jigar Vakil for Defendants and Respondents.

Federico P. Peralta, Jr., and Teresita S. Peralta (collectively "the Peraltas"), in connection with a notice of default being recorded against their home, sued U.S. Bank, N.A.; Bank of America Corp. (Bank); Recontrust Co. (Recontrust); Mortgage Electronic

1

Registration Systems, Inc. (MERS); and Does one through 10. In a second amended complaint, the Peraltas brought four causes of action: (1) fraud, including negative fraud and affirmative fraud; (2) unfair competition or unlawful business practices (Bus. & Prof. Code, § 17200); (3) a request for legal and equitable relief due to fraud; and (4) a request for declaratory relief due to unconscionability in the refinancing transaction.

Bank, Recontrust, and MERS (collectively "defendants"), demurred to the Peraltas' second amended complaint (SAC). The trial court sustained the demurrer without leave to amend and dismissed the SAC as to defendants. The Peraltas contend the trial court erred because the SAC set forth sufficient allegations for (1) an affirmative fraud cause of action; (2) a negative fraud, i.e., concealment, cause of action; (3) an unfair competition cause of action (Bus. & Prof. Code, § 17200); and (4) an unconscionability cause of action. The Peraltas also assert that, at the hearing on the demurrer, the trial court improperly placed the burden on the Peraltas. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

The Peraltas filed their original complaint on July 15, 2011. The Peraltas filed their first amended complaint (FAC) on August 23, 2011. Defendants demurred to the FAC. The Honorable Judge Webster presided over the hearing on the demurrer to the FAC. The trial court indicated its tentative ruling was to sustain the demurrer with 45 days leave to amend "since this is the first demurrer." The court added, "I will be

2

surprised, [plaintiff's counsel], if you're going to be able to allege specific acts for fraud." The court sustained the demurrer with 45 days leave to amend.

The SAC was filed on October 29, 2012. In the "Preliminary Facts" section of the SAC the Peraltas set forth the theory that, at the height of the real estate bubble, American banks were no longer in the mortgage business, but had transitioned to collecting payments for securities. Specifically, banks used to be in the business of offering mortgages and personally handling those mortgages. However, in recent years, American banks "destroyed" that method of handling mortgages by securitizing the loans. After banks began securitizing mortgages, the banks became "'servicers'" of the securities by collecting payments but having no control over the mortgages. The Peraltas assert the banks stopped appraising real property based upon conventional criteria and began basing appraisal values "upon what the financial institutions could market these securities (GSEs) [for]."

As to the Peraltas, they owned a home in Temecula (the property), which they purchased with a mortgage. In July 2006, "a loan broker working for [Bank]" appraised the property and concluded it had a fair market value of $841,000.[1] Based upon the appraised value, in 2007, the Peraltas refinanced their mortgage. After refinancing, the Peraltas had a $650,000 adjustable rate mortgage, and a $106,900 second priority "equity line of credit type loan." On April 14, 2011, defendants issued, and on April 15,

---

[1] In the SAC, the Peraltas also assert the appraised value of the property was $525,000. We infer $841,000 is the correct value that was given by the appraiser, since that value appears more often in the SAC.

defendants recorded, "a 'notice of default and election to sell under [the] deed of trust'" in relation to the property. Defendants alleged the Peraltas defaulted on a debt of $144,449.31. In October 2012, the balance on the adjustable rate mortgage was $688,970, and the property's fair market value was $350,000.

The Peraltas' first cause of action was for fraud, both affirmative and negative fraud within the same cause of action. The Peraltas explained that the representations alleged in the fraud cause of action were primarily "made by persons associated with the Countrywide various entities [*sic*] and its employed appraisers modestly reviewed in paragraph 20." In paragraph 20, the Peraltas alleged Countrywide had a unit known as "Full Spectrum Lending" that operated a program known as "'Hustle.'" The Hustle program was operated by "unqualified and inexperienced clerks called loan processors." Bank purchased Countrywide in 2008.

The Peraltas also assert it was "defendants' Lending Personnel" who made the false representations. The Peraltas define "lending personnel" as defendants' "lending team comprised of people identified as vice-president, or manager, or as an appraiser or as a broker, or a loan officer, or a loan processor, or employee of some type author[iz]ed to create and process loan documents."

The Peraltas alleged several false representations were made to them: (1) the property had increased in value to $841,000; (2) the property had a fair market value of $841,000; (3) the rapid rise in the property's value reflected the "purchase" was secure (we note this was a refinance, not a purchase); (4) the fair market value of the property "was ever-increasing," so the property "could be 'turned for a profit' in the near future,

4

or refinanced to obtain better terms"; and (5) the mortgage was "'good for [the Peraltas].'"

The Peraltas alleged the "Lending Personnel" knew the $841,000 appraisal was "unsustainable and artificially inflated." The "Lending Personnel" also knew the appraisal and the other representations "were highly and outrageously speculative" and "served only to profit defendants and their collaborators, agents, and associates." The Peraltas further alleged the "Lending Personnel" knew the Peraltas were "unsophisticated" borrowers and "ill-versed in real estate matters." The Peraltas asserted the "Lending Personnel took advantage" of the Peraltas.

The Peraltas faulted defendants' "Lending Personnel" for failing to disclose the loan would be securitized, thereby rendering it "non-modifiable." The Peraltas alleged investors in the securitized mortgages were "warned of their risks," but no risk information was disclosed to the Peraltas. For example, Countrywide, in its 2007 annual report, wrote, "'Recently, we have seen broad-based declines in housing values. We expect housing values to continue to decrease during the near term which will affect our credit loss experience . . . .'" The Peraltas asserted, "The failure to disclose like risk factors between the borrowers vis a vis the disclosures made to the investors, is and was a negative fraud."

Defendants demurred to the SAC. Defendants asserted the fraud cause of action was time-barred because fraud claims are subject to a three-year statute of limitations. Defendants argued the Peraltas alleged the fraud occurred in 2006, so their claim expired in 2009. Defendants further argued the Peraltas failed to plead the fraud claim

5

with specificity. Defendants asserted the Peraltas failed to allege (1) why the alleged statements were false; (2) when the statements were made; (3) in what manner the statements were made; (4) the name of the person or people who made the statements; and (5) the person's or people's authority to speak on defendants' behalf.

Defendants also asserted the Peraltas failed to allege they justifiably relied on the appraisal, since appraisals are conducted for the lender's benefit. Defendants also asserted they have no duty to disclose to the recipient of a loan that the recipient is using the loan for "'an unsafe investment.'"

The Peraltas opposed the demurrer. In regard to the statute of limitations, the Peraltas argued the "critical knowledge date" was July 15, 2008. The Peraltas reasoned that Bank purchased Countrywide in 2009, and Bank would not have purchased Countrywide "if it had known of the real estate collapse," so it is "incongruous" to hold the Peraltas to "a higher standard of learning of the collapse than the biggest bank in the country!" As to the specificity of the pleadings, the Peraltas asserted defendants failed to attack the negative fraud claim, so that claim "is presumed to be properly pled." The Peraltas did not explain if the affirmative fraud claim was sufficiently pled.

The Honorable Judge Riemer presided over the hearing on the demurrer to the SAC. The court said its tentative decision was to sustain the demurrer without leave to amend. The court asked the Peraltas' attorney, Mr. Gillen, how he would amend the complaint if granted leave to amend. Mr. Gillen responded, "Well, I don't—at this moment, I don't know. I would do more research and—I couldn't answer the question how I would do it right now, but I would like to have the opportunity to do it." The trial

court noted the Peraltas had three opportunities to state a sufficient cause of action. The court sustained the demurrer without leave to amend.

## DISCUSSION

### A. FRAUD

#### 1. *CONTENTIONS*

The Peraltas contend the trial court erred by sustaining the demurrer as to the fraud cause of action because (1) fraud does not need to be pled with specificity; (2) under the liberal construction rule, the affirmative fraud claim is sufficiently pled; and (3) the negative fraud claim is sufficiently pled.

#### 2. *PLEADING STANDARD*

We apply the de novo standard of review. (*Betancourt v. Storke Housing Investors* (2003) 31 Cal.4th 1157, 1162-1163.) We address the Peraltas' contention that fraud need not be specifically pled. The Peraltas assert fraud does not need to be pled with specificity because this higher pleading standard was created by the courts rather than the Legislature. The Peraltas argue the Code of Civil Procedure does not impose a higher pleading standard for fraud, and courts are "sworn to uphold" the laws set forth by the Legislature. Therefore, this court can choose to follow the Legislature's liberal construction rule, rather than the court created rule regarding specificity.

While there are a number of problems in the Peraltas' theory, the most glaring issue is that they have ignored the law that requires this court to follow the precedent set forth by our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455-456.) Our Supreme Court requires fraud claims to be

7

"pled specifically; general and conclusory allegations do not suffice." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.)  The Supreme Court explained, "'This particularity requirement necessitates pleading facts which "show how, when, where, to whom, and by what means the representations were tendered."'  [Citation.]  A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater.  In such a case, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'  [Citation.]" (*Ibid.*)

We, as an intermediate appellate court, cannot contradict the Supreme Court by concluding fraud need not be pled with specificity.  We are bound to follow the precedent set by our Supreme Court, i.e., fraud must be pled with specificity.

In the alternative, the Peraltas assert an exception applies in this case.  Our Supreme Court has created an exception to the higher pleading standard in fraud cases.  In particular, "[l]ess specificity is required when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy.'  [Citation.]" (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217, superseded by statute on other grounds.)

For example, a plaintiff could not be expected to know the precise identity of the person making an alleged misrepresentation if it were made over the phone by an anonymous employee or in an unsigned document.  In that situation, the plaintiffs must allege as much information as they can, such as the date of the conversation in which

8

the representation was made, the title of the person making the representation, and the name of the department in which the person worked. (See e.g. *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 793-794 [complaint sufficiently identified persons making representations on defendant's behalf where plaintiff alleged that on one date, she spoke with "a supervisor" in defendant's "loan modification department" and on another date, with another employee in that department; fraud claim also supported by letter from defendant, attached to the complaint, bearing no signature].)

The Peraltas alleged that "lending personnel" of U.S. Bank, Bank of America, Recontrust, MERS, and/or Does one through 10, made false representations regarding the fair market value of the property, the availability of future refinancing, and the appreciation that could be expected. The Peraltas alleged the false representations were primarily made by Countrywide, but failed to specify which statements were attributable to Countrywide. They specified neither dates nor approximate dates on which the representations were allegedly made. Nor did they specify the circumstances surrounding the conversations that led to the representations, such as whether they were made in person or telephonically. They also failed to provide any information that would assist in identifying the speakers, such as the location of the departments or branches in which the speakers worked or the positions they held. As a result, it is unclear what information defendants may or may not have about the case. Accordingly, the exception does not apply in this case because it does not appear from the nature of

the allegations that the defendants must necessarily possess full information concerning the facts of the controversy.

The Peraltas assert it can be inferred that defendants would be in possession of the information relevant to the Peraltas' fraud cause of action. The Peraltas do not identify from what document or information this inference can be made, but we will assume it is the SAC. Contrary to the Peraltas' position, they allege, in the SAC, that Countrywide and Bank "relied almost exclusively on unqualified and inexperienced clerks called loan processors. These persons were rewarded on [the] volume of loans pushed through, not quality."

The Peraltas do not allege they interacted with any particular group of loan processors. However, they allege Countrywide and Bank were essentially incompetent when it came to loan processing. Therefore, it cannot be inferred that defendants would necessarily have the information related to the fraud cause of action because the people potentially handling the loan paperwork were allegedly "unqualified and inexperienced." One could speculate that the paperwork was poorly handled, not properly stored, etc., assuming this is the group with which the Peraltas interacted. In sum, we are not persuaded the exception applies in this case.

Since (1) we are bound by our Supreme Court's precedent regarding fraud being specifically pled, and (2) the exception to the pleading rule does not apply in this case, we conclude the Peraltas were required to specifically plead their fraud cause of action.

### 3.    *AFFIRMATIVE FRAUD*

The Peraltas' next assertion is that, under the liberal construction standard, they sufficiently pled the affirmative fraud cause of action.  Since we have concluded the higher pleading standard applies, we reject the Peraltas' argument that their pleading is sufficient in regard to affirmative fraud, because the argument is dependent on applying the liberal construction rule, which is inapplicable in this case.

### 4.    *NEGATIVE FRAUD*

The Peraltas assert they provided sufficient allegations to support a cause of action for negative fraud, i.e., fraudulent concealment.[2]  Defendants contend the fraud cause of action is time-barred and insufficiently pled.

We will assume, for the sake of addressing the merits of the Peraltas' cause of action, that the statute of limitations was not exceeded.  We apply the de novo standard of review.  (*Balikov v. Southern California Gas Co.* (2001) 94 Cal.App.4th 816, 819.)  As explained *ante*, when bringing a fraud cause of action against a corporate defendant, "the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote,

---

[2] ""'[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.'" [Citation.]"  (*Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248.)

11

and when it was said or written.' [Citation.]" (*Lazar v. Superior Court*, *supra*, 12 Cal.4th at p. 645.)

The Peraltas fail to allege with whom they spoke, the person's or people's authority to speak, and when the statements were made. The Peraltas, instead, give a laundry list of possible speakers. The Peraltas assert the person or people who made the false representations were part of defendants' "lending team comprised of people identified as vice-president, or manager, or as an appraiser or as a broker, or a loan officer, or a loan processor, or employee of some type author[iz]ed to create and process loan documents." The Peraltas also describe a unit, known as "Full Spectrum Lending," within Countrywide, but do not assert that they interacted with that specific unit.

The Peraltas allege the fraudulent appraisal was conducted in July 2006, and they obtained their refinanced mortgage in 2007. However, they do not assert when the duty to disclose information arose, or when the information should have been conveyed. Due to the lack of information in the pleading regarding (1) who was responsible to disclose information to the Peraltas; (2) names of the person or people to whom the Peraltas spoke; (3) other possible identifying information, such as a physical address, telephone number, fax number, e-mail address, which would allow one to possibly identify the person or people involved in the alleged concealment; and (4) a timeline related to the fraud, we conclude the trial court properly sustained the demurrer without leave to amend.

B.    UNFAIR COMPETITION

The Peraltas contend the trial court erred by sustaining the demurrer on the unfair competition cause of action.  (Bus. & Prof. Code, § 17200.)  Defendants contend the Peraltas lack standing for this claim, the cause of action is time-barred, and it is insufficiently pled.

In regard to private individuals, Business and Professions Code section 17204 restricts standing to bring an unfair competition action to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204; see also *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 521.)  Our Supreme Court has explained that there are "innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.  [Citation.]"  (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323.)  "It suffices to say that . . . a private plaintiff filing suit . . . must establish that he or she has personally suffered [economic] harm."  (*Ibid.*)

In the SAC, the Peraltas allege that, in April 2011, "defendants recorded a 'notice of default and election to sell under deed of trust' alleging a default of $144,449.31.'" The property has not been foreclosed.  In the SAC, the Peraltas assert they suffered economic damages due to (1) the property losing value; (2) having paid money, such as

13

fees, "to consummate the fraudulent loan"; and (3) the "prospect of losing the [property] to foreclosure."

In regard to the property losing value and the prospect of foreclosure, the Peraltas have failed to allege that any money has been lost. They only assert money may be lost in the future, due to foreclosure or selling the property for less than they owe on their mortgages. At this time, the Peraltas still own the property, and could potentially sell it for more than they owe. There is no way to know at this time (1) if the Peraltas will suffer a loss if they sell the property, and (2) if the Peraltas will suffer a foreclosure. Any discussion of loss in this regard would be speculation.

Next, we address the loan fees the Peraltas allegedly paid, which the Peraltas estimate amounted to $50,000. As set forth *ante*, the alleged economic losses must have been incurred as "a result of the unfair competition." (Bus. & Prof. Code, § 17204.) The Peraltas fail to allege that they would not have incurred the loan fees but for the alleged artificially inflated appraisal value. For example, it is unclear if the fees would have been the same and the Peraltas still would have refinanced the property if the property were appraised at $350,000—the alleged current market value. Since the Peraltas allege only that fees were incurred, but do not allege that the fees were incurred as a result of an unlawful business practice, we conclude they lack standing. As a result, we conclude the trial court properly sustained the demurrer on the unfair competition cause of action.

14

## C. UNCONSCIONABILITY

The Peraltas assert the trial court erred by sustaining the demurrer on their cause of action for unconscionability (Civ. Code, § 1670.5).

In the SAC, the Peraltas cite Civil Code section 1670.5 as the legal basis for their unconscionability cause of action. "Unconscionability operates as a defense to enforcement of a contract of adhesion." (*California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 213.) Civil Code section 1670.5 "does not in itself create an affirmative cause of action but merely codifies the defense of unconscionability. [Citation.]" (*California Grocers*, at p. 217.) Accordingly, unconscionability does not exist as an affirmative cause of action—it is only a defense. As a result, we conclude the trial court properly sustained the demurrer as to the unconscionability cause of action.

## D. BURDEN

The Peraltas contend that, at the hearing on the demurrer to the SAC, the trial court improperly placed the burden on the Peraltas. The Peraltas provide no record citations to support their contention. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [record citations in appellate briefs].) However, since the demurrer hearing was brief, we will speculate that the Peraltas are taking issue with the trial court asking the Peraltas' attorney, "[H]ow would you propose to cure [the defects in the SAC]?"

The trial court was correct in placing the burden on the Peraltas regarding the amendment issue. It was the Peraltas burden to (1) explain how they would amend the SAC, and (2) how that amendment would change the legal effect of the pleading.

(*Holcomb v. Wells Fargo Bank, N.A.* (2007) 155 Cal.App.4th 490, 495.)  Since the burden was appropriately placed on the Peraltas, we conclude the trial court did not err.

E.      REQUEST FOR JUDICIAL NOTICE

Defendants request this court take judicial notice of (1) a 2005 grant deed for the property, (2) a 2005 deed of trust encumbering the property, and (3) a 2005 reconveyance of the property.  Defendants assert judicial notice should be taken because the documents reflect the Peraltas purchased the property in 2005 for an amount exceeding $750,000, which helps to refute the Peraltas' assertion that the property was only ever worth $350,000.  While we can take judicial notice of recorded documents related to a real estate transaction (*Jenkins v. JP Morgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 537), we deny the request in this case because the documents are not necessary to resolving the matter (See *Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569).

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____
                        J.

We concur:

RICHLI_____
           Acting P. J.

KING_____
              J.